15-3749 from the District of Minnesota, Kathleen Uradnik v. Inter Faculty Organization et al. I think the court will hear from Mr. Riley. Thank you, Your Honor, and may it please the court, I'm Richard Riley on behalf of the appellant, Dr. Kathleen Uradnik. My client is a public university professor who has been walled off from broad swaths of official university business and opportunities available to similarly situated faculty members solely because she declines to join an expressive association. As a result, my client is categorically forbidden from participating on a host of official committees that determine everything from whether an expelled student will be readmitted, to whether a study abroad program will be funded with taxpayer funds, to whether a proposed curriculum change will be approved, to whether a candidate for an executive role in the university or in the system will be hired, and even to whether a given parking ticket will be deemed wrongly issued, and so much more. These committees are government jobs. Committee members receive employment credit for their work and money compensation, and these committees do the government's work. There could be no serious question that if St. Cloud State University handled these various tasks through positions bearing a traditional employment label like parking appeal officer or a curriculum change officer, that it would have to make these jobs available to all comers regardless of their first amendment protected choices. Counsel, that may be true, but what's your strongest evidence that count two was actually pled as an unconstitutional conditions claim? I think we can start with paragraph four in the complaint, which my friends on the other side declined to even mention, and that's at appendix 12 and 13, which describes that the defendants have, quote, negotiated special preferences for union members, including preferences that tilt the scales in union members' favor in such matters as tenure and promotion decisions. This system unlawfully allocates state granted benefits and state imposed burdens on the basis of political association. That is the substance of unconstitutional conditions, and my friends on the other side simply argue that because the words unconstitutional conditions do not appear in the complaint, that it's not there. That's exactly the position that the Supreme Court summarily reversed in the Johnson versus City of Shelby, Mississippi case, where a reference to section 1983 was omitted from a complaint, and the court reiterated the rule, which has been recognized in this court many, many times, and in cases throughout the judiciary, that there is no theory of pleadings requirement under the federal rules of civil procedure. That's a field code requirement. That's been gone since before 1938. Under the federal rules of civil procedure, the question is the factual content of the complaint, and whether that gives rise to a claim. Rule 8A says it has to show that the pleader is entitled to relief. So, counsel, again, I would invite you to, I guess, expand on that. What facts were pled that make a plausible unconstitutional conditions claim? So, let me answer that two ways. First, I want to give you the paragraphs where that is, and then second, I want to emphasize that we have a very odd posture here where that's not actually an issue, but let me speak to your question first. Paragraphs 27 through 38 describe the committees, where they originate from, where in the collective bargaining agreement the parties, the defendants have agreed to permit the union to appoint members to system-level committees, and I would especially commend to the court's attention paragraph 31, which talks about the search committees, which is a big part of our case, that actually control the search process. They decide which candidates will make it to the final round, and the administration is required to choose from those candidates. So, that's engrafted into the government. So, all of those facts are there, and then we have the counts at the end, paragraphs 61 through 64, and we have multiple points in our prayer for relief, asking to end the discrimination. But I think there's a second point that's really important here, which is that the defendants have forfeited any type of Twombly and Iqbal type challenge to the sufficiency of the allegations, because they moved for summary judgment. And at that stage, my client is absolutely entitled to respond with evidence. And so, it's not unusual at all that the evidence would outpace the pleadings in the case. We put on substantial amount of evidence demonstrating that these committees do the government's work. They're not simply speech forums, as in the Knight case. They're employment forums, as in the O'Hare truck services case. And there's no evidence on the other side. My friends on the other side presented no evidence about the Uniform Curriculum Committee, which makes the curriculum choices, about the Parking Appeal Committee, about the search committees, and so on and so forth. And yet, they insist that my client, the non-moving party, is restricted to her complaint, and they get to rely on nine declarations that the union filed, which largely have information pertaining to count one, it has very little information on count two, and that somehow the rules allow them to have it both ways. The fact is, this case comes before this court as a summary judgment ruling, and the record before this court is the summary judgment record, which includes the evidence that we have put on. If I may, unless the court has further questions about the procedure, and we do have other procedural arguments, though I don't think the court needs to read them, including about amendment, or it doesn't need to reach them, excuse me, including about amendment, but I would like to turn to the merits, unless the court has further questions on procedure. The O'Hare truck services case, and the Waubonsie County Commissioner's case, make eminently clear that the state law label of a position is not what's relevant. The question is whether a position does the government's work. The state can call it an independent contractor, they can, as in this case, use the label meet and confer, which is relevant under the State Employment Relations Act called PELRA, and that's not what the federal court looks at in determining first amendment rights. The question before the court is whether these committees do the government's work. Whether it's a formal employment relationship or not is irrelevant, and I think there's two parts to that test. The first question is whether there is government work at issue, or whether it's private work, and the second question is the committees perform the government's work, or whether they simply provide a forum to talk about the government's work done by others, and that's the distinction between this case and the Knight case. Here, we put forth substantial evidence at the summary judgment phase before discovery, establishing that the answer to both questions here is in the affirmative. As to whether it's government's work, there can be no serious question that the decision of what curriculum to use, or whom to hire for positions, or whether to readmit an expelled student, or entertain a grade appeal, or award an honorary doctorate, and so forth, springs from, arises from, the government's work in operating a public university, just like... Council, I do have a question, and I understand you're wanting to get to the merits of what I understand to be your count two, correct? That's right, Your Honor. And it seems to me that the procedure sort of overwhelms this. You're arguing your summary judgment motion really to us at this point because of the way the district court handled it, and really determined that you had not raised it. I understand that there's the motion to reconsider a ruling. Is that what you're getting at, or are you getting at his summary alternative holding in that, or where are you targeting this merits argument? Well, I think we have four places we're targeting it, and I think we get to the same place on the merits all the same. The first is that on summary judgment, the court has to take our side of things, not their side of things. So that's rule number one. And that alone, I think, because remember, the court converted it. I'm not asking the court to rule on summary judgment. That was the district court's decision to convert the case to summary judgment. That's how this comes packaged to this court. So that's point one. Point two is that we also presented the material as a basis for indicating that an amendment to the complaint wouldn't be futile. And we said to the court that if it had a problem with our complaint, because we recognized we had a lot more information, largely due to the odd posture where we developed facts with the other side in an effort to stipulate to arrive at summary judgment without discovery. So we had more facts to present, and we told the court this information can be put into the complaint through an amendment. And we said that before judgment. Now, my friends on the other side tell you that that doesn't count, but they're over-reading their cases dramatically. The Minneapolis firefighters case, the Clayton case, and the Novastar financial securities case all say that it's not appropriate to simply say in a brief, we could amend without providing the content of an amendment. But we did provide the content of an amendment. So this case is really like word versus Missouri Department of Corrections, where this court reversed a district court's failure to entertain that information that was their briefing. So we're more like that. We provided the content and told the district court before judgment that this information could be added to the complaint if there's a concern about the complaints. Because remember, we're also fighting a motion to dismiss, so we're trying to fight this case out on two fronts. The next point that I want to make, of course, is that we did renew the request after judgment through Rule 59, which the Supreme Court's decision in Foman v. the rules of the standards of Rule 15. And that was another flaw in the Clayton case and the Minneapolis firefighters case and the Novastar financial securities case. There was a failure to do that, and the court emphasized that failure. We didn't fail in that way. We provided it. We provided the amended complaint. And so our position there is that it was an abuse of discretion not to consider it, at least at that point. But again, you don't have to get there. We can win on point one for this court to reach the merits of our claim. And I see I'm into my rebuttal time. Unless the court has further questions, I'll step aside and reserve it. Very well. Thank you, Mr. Reilly. The court will hear from Mr. Cummins. Good morning, and may it please the court. I'm Brendan Cummins, representing Appellee Interfaculty Organization. Dr. Rednick's quarrel here really isn't with Judge Magnuson's decision below. It is with the Supreme Court's holding in Knight. The Supreme Court held in Knight that exclusion of non-union faculty from meet and confer committees under the Minnesota PELRA does not violate the First Amendment. That holding is precisely on point and requires dismissal of Appellant's only claim that she contests on appeal. This court explained in Behrman, quote, where a precedent like Knight has direct application in a case, we should follow it. Counsel, it seems to me you're conflating institutional policymaking under Knight with the denial of benefits under the O'Hare truck decision. Those are two very different things. Well, importantly, Knight controls here, even if Appellant were allowed to reconstruct her claim as challenging unconstitutional condition. In Knight, the majority opinion rejected the unconstitutional conditions theory, which was squarely presented to the court in the Supreme Court briefing and the district court opinion and in Justice Brennan's dissenting opinion. Now, the theory is premised on the argument that meet and confer committees are supposedly an essential job condition, a government benefit, or even a government job because of their significant influence and the central role they play in university affairs. Therefore, the exclusion of non-union faculty supposedly creates pressure to join the union. But Knight's majority opinion rejected this theory, stating, and I quote, it is obvious and of no legal consequence that the meet and confer process is the only significant forum for the faculty to resolve virtually every issue outside the scope of mandatory bargaining. It's resolving virtually every issue outside the scope of mandatory bargaining. That's the core of Appellant's complaint here. That's a core fact that was found by the district court in Knight, and it's the essence of the unconstitutional conditions argument, supposedly making this a government job. Now, the court said this is of no legal consequence for three different reasons. First, exclusion from Peller's meet and confer process places no restriction on the right of non-union faculty to speak out and communicate directly to the university administration on the very same subjects as meet and confer committees and associate or non-associate with whomever they including the exclusive representative. Second, the Supreme Court recognized that the unions meet and confer teams play a union representative role. They act on behalf of the majority representative to express the official collective position of the faculty in the court's words. They are not doing government jobs open to the public. It makes no sense to have someone who's opposed to the majority representative speak on its behalf. Third, the Supreme Court acknowledged the pressure that non-union faculty may feel to join the union, but found that the pressure was inherent in a democratic system like Pellera that recognizes a majority representative. The court explained, and I quote, the pressure is no different from the pressure to join a majority party that persons in the minority always feel. Such pressure is inherent in our system of government. It does not create an unconstitutional inhibition on associational freedom. Democracy does not violate the first amendment. Now turning to the procedural issue of whether appellant pled in unconstitutional conditions claim under the applicable federal pleading standard, courts are not required to be mind readers. Count two of the complaint that is pled does two things. It objects to the union's rights of exclusive representation and to appoint members to meet and confer committees. And it alleges that quote, these rights discriminate against the plaintiff and others who decline to associate with the union. Now saying these rights discriminate is not the same thing as saying that Pell replaces an unconstitutional condition on government employment or a government benefit. Now paragraph four that appellant has cited to refers to negotiating special preferences. That's part of the meet and negotiate process. This complaint challenges two procedures, exclusive representation and meet and negotiate process and the meet and confer process. And negotiating special preferences has nothing to do with the meet and confer committees and the right under Pellera to appoint union members to meet and confer committees. That paragraph four does not state an unconstitutional conditions claim. This complaint is pled as a challenge to exclusive representation in the meet and confer and meet negotiate process and a series of harms that allegedly flow from exclusive representation. There's not an allegation in the complaint that a series of facts amounts to meet and confer committees being a government job. That's not. Councilor, could you clarify a little bit more finally your understanding of the difference between counts one and counts two based on a reading of the complaint? Sure. That's a very good question. So those counts are almost identical with the exception of paragraphs 51 and 52 and 61 and 62. Otherwise the verbiage is exactly the same and they both challenge exclusive representation. And the first count appears to challenge exclusive representation just generally and count two it focuses on exclusive representation and in the meet and confer process only and suggests that quote these rights discriminate. What that means I think can be inferred that it refers to exclusion from the meet and confer process is discriminatory. That's really the essence of it. Exclusion for the process is discriminatory and I don't think the complaint does a good job of making clear the differences but I think that theory of discrimination is really the difference and that is directly addressed in night. It was in the Supreme Court briefing. We quote that in our brief and the court rejects that argument noting that. Councilor, given that situation why shouldn't they be allowed to amend? Normally amendment is freely granted. Now we are post judgment here but the opposing council says that they raised this before judgment. Well this court's explained that post dismissal motions to amend are particularly disfavored when the plaintiff was put on notice of the need to change the pleadings before the complaint was dismissed but failed to do so. The plaintiff recognized the shortcomings in her complaint here and the risk she ran in proceeding without amending her complaint. She to the point where she declared to the court in her opposition to the dispositive motions that she quote elected to litigate these motions rather than amend at the outset. She elected to litigate rather than amend. This was a deliberate tactical choice on her part. She knew that she hadn't pled on constitutional conditions. This is why she's reserving the right but under eighth circuit precedent she doesn't get to reserve the right to amend. She has to move to amend when she recognizes the need. That's her responsibility not to do a test run with the court and get an advisory opinion about whether or not the complaint should be dismissed and then amend afterwards. Now appellant says well I didn't unjustifiably delay because case is in its early stages but waiting until after the case has been dismissed is an unexcusable delay particularly when the appellant here was aware that the complaint may need to be amended. In any event, the district court properly exercised its discretion to deny the motion to amend because it would be futile. Knight's directly on point whether appellant is allowed to characterize her claim as unconstitutional conditions or not. Knight governs. It rejected the unconstitutional conditions theory. The bottom line is Knight controls this case. It's the same case separated only by a few decades. Accordingly, this court should affirm the district court's decision. Thank you Mr. Cummins. The court will hear from Mr. Campion. Thank you, your honor. May it please the court. My name is Jacob Campion. I'm an assistant attorney general for the state of Minnesota and I'm here on behalf of St. Cloud State University and the board of trustees for the Minnesota state system. I'll be quick. As you've seen in the briefing, our arguments substantially overlap with the IFOs. One point that I'll emphasize is something that this court said in Beerman. This court said if you give not a fair reading, you'll see that there is no meaningful distinction between this case and Knight. And the same thing is true here with respect to count two. Count two says that they are challenging meet and confer rights under Minnesota law. That's in paragraph 61 and that they're challenging the IFOs contractual right to select individuals for meet and confer committees also in paragraph 61. This is exactly what Knight was about and you see that in the Knight decision at 273 and 278 as well as the district court decision at 13 to 14. The plaintiff's legal theory in paragraph 62 to 64 is that these rights discriminate against those who decline to associate with the union. We've showed you where in the brief the challengers and Knight use that exact same language. Then they also repeat their argument from count one that it attributes the union's speech and petitioning to non-members and restricts plaintiff's speech and petitioning. That's the same as count one and fails the same reasons articulated in Knight when they addressed this claim and in Beerman when they addressed this claim. As to this unconstitutional conditions claim, it wasn't pled. It's just not there what they're trying to argue now about compensation or work time and the district court has considerable discretion to deny this type of gamesmanship. It's right in the 26F report that this was the plan all along to oppose the motion to dismiss and if they fail to move to amend and count on the court's leniency. Let me ask you counsel, how do you characterize count two? So count two is a challenge to meet and confer rights under Minnesota law and then the contractual provision that challenges that allows the IFO to select members to meet and confer committees. And isn't that what they're saying? Isn't that sort of what what she's saying is that the meet and confer leads to the committees which is a valuable position within the university? If she was still saying meet and confer, then that's completely bound by Knight. But what she's saying now is that these committees aren't even meet and confer which directly contradicts what her complaint says. She says no, we're not challenging meet and confer, we're challenging committees. And that just wasn't pled and the court has considerable discretion to deny that. But even if the court were to consider it, it's still futile. Again, based on a fact that fair reading and Knight that the essence of the claim is the same. We have the same types of committees that sweep across all issues of governance. They reach many issues integral to the professional function of professor and that the professors considered it essential. That was all in Knight. They covered budget, curriculum, new courses, organization, facilities, accreditation, student affairs, fiscal planning, administrative review and hiring. That was all in Knight and they have the same function that the plaintiff is complaining about now. It's clear from the district court decision and the U.S. Supreme Court decision that those committees didn't just discuss issues but also resolve them. And that is what is her principal complaint is now. And they made the same argument. We've shown you where in the district court tried to reason that this was precisely, excluding nonunion members, was quote precisely an impermissible condition of employment. And it's also in the challenger's brief in Knight talking about conditioning, condition of those individuals receipt of government benefits. This is all covered by Knight and if you give Knight a fair reading as you did in Beerman, it's clear that there is no meaningful distinction to be made. And they're free to ask the U.S. Supreme Court to overturn Knight but we'd ask that the 8th Circuit affirm the district court's judgment because it's bound by Knight. Okay, thank you, your honor. Are you finished, Mr. Campion? Yes, I'm sorry. If there are no further questions, I'm finished. Thank you. Very well. Mr. Riley, your rebuttal. Thank you, your honor. I want to make two points beginning with Knight. It is absolutely clear that in the conferred committees challenged, there were forums for union speech. Every single argument, including the argument at footnote 12 that Mr. Cummins read was met by the argument that there is no constitutional right for an audience with the government. There is no statement of fact that my friends on the other side can point to that says that there's actually a government power being exercised here. In all of the meet and confer committees in Knight, there was only speech. There is a material dispute of fact in this case as to what the meet and confer committees challenged here do, or at least some of them. I'm sure there are some committees at the university and in the system that are forums for speech. We are not challenging Pelver meet and confer. Our position is that the label is not relevant, just as the Supreme Court tells us in the O'Hare trucking case and many other precedents. The court has to look to the substance of what some of these committees are doing. What they're doing is giving a vote, an actual piece of the power of the university. In some cases, like the faculty association committees, there's not even an administrator there. There's not speech to the administrator because the only people on the committee are faculty members. They're voting on it. They're deciding it. In many cases, there's not even an appeal right that is resolved in that committee. There is no evidence on the other side of that question. Even if there were, that fact question has to be resolved in our favor on summary judgment. I want to address briefly the complaint my friends on the other side are just not reading it. Paragraph 61 explains that the committees, as a practical matter, exercise substantial influence over the affairs at the St. Cloud State University and the agreement violates the plaintiff rights. That's referring back to paragraph 27, another paragraph that my friends on the other side refuse to read, that addresses where in the agreement the right not just to meet and confer but to actually appoint faculty members to system committees that do the government's work is given read as a whole. It's there and this was summary judgment anyway. We ask for the court to reverse the judgment below. Thank you Mr. Riley. The court appreciates all of counsel's arguments and